IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | | |
|---|---|---|
| SALLIE A. MATHIS | : | |
| | : | |
| v. | : | CIVIL ACTION NO: L-01-3815 |
| | : | |
| RAYTHEON COMPANY | : | |

## MEMORANDUM

On December 10, 2001, Plaintiff Sallie A. Mathis filed a complaint for failure to promote under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. Now before the Court is Defendant Raytheon Company's ("Raytheon") Motion for Summary Judgment. By Order dated February 4, 2003, the Court requested briefing on six specific points. On February 26th, the Court held oral argument on the motion. For the reasons set forth below, the Court will, by separate order, GRANT Raytheon's Motion for Summary Judgment and DIRECT the Clerk to CLOSE the Case.

## I. BACKGROUND

This is an employment discrimination case. Ms. Mathis, an African American, alleges that Raytheon denied her a promotion based on her race. In 1993, Ms. Mathis was hired by Hughes, a company that was subsequently purchased by Raytheon, as a temporary secretarial employee to assist with data entry. Approximately one year later, she became a full-time employee, working as the administrative secretary to the business operations manager.[1] Approximately four to six years later,

---

[1] In that position, Ms. Mathis kept her supervisor's calendar, input data into spreadsheets, typed up power point charts, and ran reports. She also occasionally assisted the other business analysts. She did not write press releases or communicate with high level executives on behalf of her supervisor.

Ms. Mathis's job changed; in addition to performing her regular duties, she also began to assist Steven Mentzer, Senior Manager for Finance for the Imagery and Geospatial Systems Division. Again, these duties were primarily clerical in nature.[2] In the fall of 2000, Mr. Mentzer selected Ms. Mathis to receive an achievement award for the excellent job that she had done assisting with payroll distribution problems.

In January 2001, funding became available that enabled Mr. Mentzer to hire an Administrative Specialist to work exclusively for him. Mr. Mentzer orally described the position to Ms. Mathis and asked her to find a job description for a similar position. Using an existing job description, Ms. Mathis wrote a job description for the Administrative Specialist position. Before the new position was posted, Mr. Mentzer requested that the personnel department add "significant communication skills" as a requirement. Mr. Mentzer stated that he added the requirement because the new job included "generating, facilitating, and coordinating internal and external communications for ITS [that were] related to significant program accomplishments, proposal wins, and press releases." (Pl.'s Ex. 9.) At that time, Ms. Mathis lodged no objections to the modification.

The Administrative Specialist position was posted by placing paper copies of the job opening on bulletin boards in the Raytheon facility.[3] Although the position was posted only internally, two external candidates became aware of the opening: Jennifer Warren and Kathleen Smith. Ms. Warren

---

[2]In that role, she assisted with payroll distribution and issues related to time cards for the time system, assumed the responsibilities of manning the airline ticketing machine, dealt with check requests, and entered data into spreadsheets for another member of the Raytheon Company, Bill Gildea.

[3]The job description as posted contained the requirement for "excellent communication/writing skills."

was a temporary contract employee. Ms. Smith had previously been employed by Raytheon and had recently met the Human Resources manager, Penny Collins,[4] with a view to returning to Raytheon. During that meeting, Ms. Collins informed Ms. Smith that an Administrative Specialist position might be created, and Ms. Smith expressed an immediate interest in the position.

Four women eventually applied for the position: Ms. Mathis, Ms. Smith, Ms. Warren and Margaret Spears. Both internal candidates, Ms. Spears and the plaintiff, are African American. Of the external candidates, Ms. Smith is Caucasian, and Ms. Warren is African American.

Each of the candidates submitted a resume for review. During the first week of February 2001, Mr. Mentzer interviewed the candidates.[5] Following each meeting, Mr. Mentzer completed an "Interview Feedback Summary Form." Mr. Mentzer scored each of the candidates in the following areas: work interests, education, experience, and communication skills. The form also called for an overall rating of the candidate, and for a disposition.

Among the four candidates, Mr. Mentzer gave Ms. Smith the highest scores and recommended that she be hired. Mr. Mentzer found that she had extensive experience as an Executive Administrative Assistant – nineteen years worth – and that she had excellent communication skills. Although Smith had never worked directly for Mr. Mentzer, he was familiar with her work from her previous stint at another Raytheon location.

Mr. Mentzer gave the plaintiff the lowest scores among the four candidates, and also indicated

---

[4] Ms. Collins is also an African American.

[5] Ms. Mathis alleges that she was not formally interviewed for the position. The record reflects, however, that her initial interview was canceled due to a conflict. Mr. Mentzer then requested that Ms. Mathis come to his office and asked her questions similar to those asked of the other interviewees.

on the form that he had "no interest" in hiring her for the position. Although he believed that Ms. Mathis had done a capable job in her position, he attributed her low scores to her limited experience in executive level professional support. In addition, based on his experience with Ms. Mathis, he believed that she lacked the communication skills necessary for the new position, which both parties agree would have constituted a promotion for her.

Mr. Mentzer's recommendation that Ms. Smith be hired for the Administrative Specialist position was approved by Mr. Klotz, Vice President-Programs, and by Ms. Collins. Ms. Smith was subsequently hired, and Mr. Mentzer informed Ms. Mathis that she had not been selected for the position.[6]

On March 6, 2001, Ms. Mathis submitted a formal complaint to Ms. Collins, alleging that she had been denied the promotion because of her race. In support of her complaint, Ms. Mathis alleged that she had been asked to assist Ms. Smith in acclimating to the office, that Mr. Mentzer violated the policies governing the hiring process,[7] and that Ms. Smith's status as the wife of a Raytheon Executive played a role in the alleged discrimination.

Some time later, Ms. Mathis submitted a formal charge to the Equal Employment Opportunity Commission ("EEOC"). On September 10, 2001, the EEOC issued her a right-to-sue letter. On December 10, 2001, she filed this civil complaint. Defendant now moves for summary judgment.

---

[6] Due to restructuring, as of February 17, 2003, the Administrative Specialist position has been eliminated and Ms. Smith has been laid off. (Mentzer Aff. ¶ 5; Collins Aff. ¶ 7.) Ms. Mathis is still employed by Raytheon Company, but she does not work directly for Mr. Mentzer.

[7] Upon learning that she had not been selected for the position, Ms. Mathis requested a copy of the internal hiring policies from Ms. Collins, but Raytheon did not have one. Ms. Mathis then pulled a document from the Raytheon website that both parties agree governs the hiring process.

## II.  STANDARD FOR SUMMARY JUDGMENT

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.  Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

## III.  ANALYSIS

The familiar burden-shifting standard that the Supreme Court set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to Ms. Mathis's Title VII claims:  if the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions; if the defendant provides such a reason, the plaintiff must then demonstrate that the proffered reason was a pretext.  See Gillins v. Berkeley Electric Cooperative, Inc., 148 F.3d 413 (4th Cir. 1998).  Although the burden of production shifts, the plaintiff retains the burden of persuasion throughout all the stages of proof.  See Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996).

To prove a prima facie case of discriminatory refusal to promote, a plaintiff must prove the following elements: (i) the plaintiff is a member of a protected group; (ii) the plaintiff applied for the

position in question; (iii) the plaintiff was qualified for the position; and (iv) the plaintiff was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.  Carter v. Ball 33 F.3d 450, 458 (4th. Cir.1994).

Assuming *arguendo* that Ms. Mathis meets her prima facie burden, the Court focuses on Raytheon's proffered legitimate, non-discriminatory reasons for failing to promote her.  Defendant argues that it did not promote Ms. Mathis for the following reasons:

(i) Ms. Mathis was the lowest rated candidate of the four women who applied for the position;

(ii) Ms. Smith was the highest rated and the "best qualified" candidate;

(iii) Ms. Smith had significant experience supporting senior executives, which Ms. Mathis lacked;

(iv) Ms. Smith possessed better communication skills than the plaintiff; and

(v) Mr. Mentzer, the ultimate decision-maker in the hiring, had personal experience with both candidates and believed that Ms. Smith was the superior candidate.

(Mentzer Aff. ¶¶ 3-5.)

Because Raytheon articulated a legitimate, non-discriminatory reason for its conduct, the burden shifts back to Ms. Mathis to establish pretext.  To do so, Plaintiff relies on the following indicia: (i) Defendant's alleged failure to follow internal hiring procedures;[8] (ii) Defendant's alleged request for Ms. Mathis to train Ms. Smith; (iii) Defendant's allegedly discriminatory addition of "excellent

---

[8]Ms. Mathis claims that Mr. Mentzer violated the hiring process in two respects: (i) by not hiring the "best qualified" candidate, as required by § 3.4, and (ii) for failing to "disposition" those applications received during the five-day posting period before considering external candidates, as required by § 4.2.6.

communication skills" as a requirement for the position; and (iv) the fact that Ms. Smith is married to a "senior corporate officer" of Raytheon Company.  The Court will address each in turn.

    A.    **<u>Failure to Follow Internal Hiring Procedures</u>**

Plaintiff appears to argue that Mr. Mentzer knew that he had to inform internal candidates of their disposition before he interviewed external candidates, and that he deliberately failed to do so in order to avoid having to hire Ms. Mathis.  Other than her own suspicions, there is no evidence to support Ms. Mathis's theory.

The alleged deviation from the required selection process, alone, simply does not prove pretext.  Four female candidates applied for the position.  Of the four, three were African Americans, two were internal candidates, while two were external candidates.  Mr. Mentzer interviewed two external candidates – a Caucasian and an African-American woman – before rejecting the two internal candidates.  Ms. Mathis does not offer any proof that the alleged deviation was designed to discriminate against either African Americans as a class or her as an individual.  Thus, the evidence is insufficient to prove pretext.  See <u>Langerman v. Thompson</u>, 155 F. Supp. 2d 490 (D. Md. 2001) (a defendant's failure to precisely follow its own procedures does not implicate Title VII unless plaintiff shows that the failure to do so was the result of unlawful discrimination).

    B.    **<u>Ms. Mathis's Training of Ms. Smith</u>**

Plaintiff's second allegation is that Mr. Mentzer asked her to train Ms. Smith.  The request, Plaintiff argues, evidences that she was better qualified.  The Court disagrees.

During oral argument, plaintiff's counsel conceded that Ms. Mathis was only "as" qualified as Ms. Smith, and not "better" qualified.  Moreover, the evidence establishes that Ms. Mathis was never

asked to train Ms. Smith as an Administrative Specialist.  Rather, Ms. Mathis was asked to give Ms. Smith basic office training.  (See Mathis Dep. at 32.)  Accordingly, no reasonable fact finder could infer from this point that Ms. Mathis was better qualified.

### C.   Addition of "Excellent Communication Skills" to Job Description

Plaintiff's third argument of pretext is similarly without merit.  Ms. Mathis argues that Mr. Mentzer added the job requirement of "excellent communication skills" as a pretext for intentional discrimination.[9]  In support, she contends that there was no need for an Administrative Specialist to be involved in media relations when Raytheon had an entire Media Relations Unit.  (Pl.'s Opp'n Ex. 10.)  The Court is unpersuaded.

To begin with, other than Ms. Mathis's own speculation, there is no evidence to support this argument.  To the contrary, there is substantial contemporaneous evidence that Mr. Mentzer considered excellent communication skills to be a prerequisite for the job as he envisioned it.  As Mr. Mentzer testified, he added the requirement because the Administrative Specialist would be responsible for communicating the accomplishments of Mr. Mentzer's group to other branches of Raytheon and the outside world.  Mr. Mentzer avers that Ms. Smith, subsequent to being hired, coordinated the visit of Senator Mikulski, created several press releases, and written an executive summary about the creation of an "internal virtual proposal center," for which she received an internal quality certification.  (Mentzer Aff. ¶ 7.)  Although the parties may disagree as to the extent that Ms. Smith used her communications

---

[9]Although Ms. Mathis contends that she was qualified for the position, her argument is tantamount to a concession that she lacked the communication skills required for the position as advertised.

skills, there is incontrovertible proof that her duties included the type of work that Mr. Mentzer envisioned when he advertised for the position. Additionally, the personnel department did not object to the inclusion of the requirement in the job description. There is no evidence that anyone in the personnel department exhibited any bias against Ms. Mathis.

Moreover, it is not the prerogative of this Court to decide what set of skills should or should not be required for various positions in the work force. The Court lacks the expertise to assess the needs of a company, and the Fourth Circuit has repeatedly stated that courts do not sit as super-personnel departments weighing the prudence of employment decisions. DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998). In this instance, there is simply no evidence that Mr. Mentzer included the requirement in order to place an obstacle in Ms. Mathis's path.

Finally, there is no evidence on the record to support a finding of animosity, bias, or hostility on Mr. Mentzer's part toward Ms. Mathis specifically, or toward African Americans in general. To the contrary, Mr. Mentzer selected Ms. Mathis for an achievement award in the fall of 2000, and Ms. Mathis has never alleged that Mr. Mentzer was hostile or abusive to her in any way.

Accordingly, no reasonable jury could conclude that Mr. Mentzer added this requirement to the job description in order to exclude Ms. Mathis.

### D.  Ms. Mathis's Allegations of Nepotism

Ms. Smith's status as the spouse of a Raytheon executive does not establish pretext. Title VII does not outlaw nepotism. Obi v. Anne Arundel County, 142 F.Supp.2d 655, 670 n.8 (2001) (citing Holder v. City of Raleigh, 867 F.2d 823 (4th Cir. 1989). In fact, if Ms. Mathis's argument concerning nepotism was accepted, Raytheon would be entitled to judgment because nepotism would supply a

non-discriminatory reason for selecting Ms. Smith.

**IV.    Conclusion**

The record demonstrates that Ms. Mathis has been a highly valued, effective and hard-working employee for Raytheon. There is simply no evidence, however, from which a reasonable jury could conclude that Raytheon bypassed Ms. Mathis for the position because of her race.

Accordingly, for the reasons stated herein, the Court will, by separate order, GRANT Defendant's Motion for Summary Judgment and DIRECT the CLERK to CLOSE the CASE.

Dated this ___28th___ day of March, 2003.

                                                          /s/
                                          Benson Everett Legg
                                          Chief Judge